# United States District Court
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CERTAIN UNDERWRITERS AT LLOYD'S, LONDON SUBSCRIBING TO POLICY NO. B1230AP03924A17 | § § § § | |
| v. | § § | CIVIL ACTION NO. 3:19-CV-1696-S |
| PROPERTY RISK SERVICES MANAGEMENT II, and JAMES MORGAN, LTD. | § § § § | |

## MEMORANDUM OPINION AND ORDER

This Order addresses Defendant James Morgan, Ltd.'s ("Defendant") Motion to Join Subscribers [ECF No. 6]. For the following reasons, the Court denies the Motion but orders Plaintiffs Certain Underwriters at Lloyd's, London subscribing severally to Policy No. B1230AP03924A17 ("Plaintiffs") to file an amended complaint to allege the citizenship of Cyrene Capital Limited or another member or investor—i.e., a "Name"—to the Policy.

### I. BACKGROUND

This action involves a disagreement regarding the appointment of a neutral umpire in an arbitration arising under a commercial property insurance policy (the "Policy"). Compl. ¶¶ 1, 8. Defendant is a Texas limited partnership and, together with Property Risk Services Management, II, is an insured under the Policy issued by Plaintiffs. *See id.* Ex. A; Answer ¶ 1. Plaintiffs are the underwriters of Lloyd's of London who "subscribe severally to the Policy issued to" Defendant and Property Risk, Services Management, II. *See* Compl. ¶ 3. Lloyd's of London, in turn, "is not an insurance company but rather a self-regulating entity which operates and controls an insurance market," and whose members, like Plaintiffs, "buy[] and sell[] . . . insurance risk" and

"collectively make up Lloyd's." *Corfield v. Dall. Glen Hill LP*, 355 F.3d 853, 857-58 (5th Cir. 2003) (citations omitted). The members or investors of Lloyd's

> are called "Names" and they are the individuals and corporations who finance the insurance market and ultimately insure risks. Names are underwriters of Lloyd's insurance and they invest in a percentage of the policy risk in the hope of making return on their investment. . . . Each Name is exposed to unlimited personal liability for his proportionate share of the loss on a particular policy that the Name has subscribed to as an underwriter. Typically[,] hundreds of Names will subscribe to a single policy, and the liability among the Names is several, not joint.
>
> Most Names or investors do not actively participate in the insurance market on a day to day basis. Rather, the business of insuring risk at Lloyd's is carried on by groups of Names called "Syndicates." In order to increase the efficiency of underwriting risks, a group of Names will, for a given operating year, form a "Syndicate" [that] will in turn subscribe to policies on behalf of all Names in the Syndicate. A typical Lloyd's policy has multiple Syndicates which collectively are responsible for 100 percent of the coverage provided by a policy. The Syndicates themselves have been said to have no independent legal identity. Thus, a Syndicate is a creature of administrative convenience through which individual investors can subscribe to a Lloyd's policy. A Syndicate bears no liability for the risk on a Lloyd's policy. Rather, all liability is born by the individual Names who belong to the various Syndicates that have subscribed to a policy. . . .
>
> In sum, while an insured receives a Lloyd's "policy" of insurance, what he has in fact received are numerous contractual commitments from each Name who has agreed to subscribe to the risk. The Names are jointly and severally obligated to the insured for the percentage of the risk each has agreed to assume. The insured does not have to sue each name individually however to collect on their individual promises because the typical Lloyd's policy contains a clause providing that "any [Name] can appear as representative of all [Names]." Thus, when litigation ensues over a Lloyd's policy, the only named Lloyd's party appearing in the litigation is usually the lead underwriter on the policy.

*Id.* at 858-59 (citations omitted). Plaintiffs identified the following Names and Syndicates to the Policy:

> A 20% portion of the Policy is subscribed to by Syndicate 1969, which is not a citizen or resident of Texas or any other state within the United States. Cyrene Capital Limited [("Cyrene")] is a corporate member and capital provider for Syndicate 1969 and is a subsidiary of Cyrene Investments Limited, which is organized and maintains its principal place of business in the United Kingdom, a participating country to the Convention. Furthermore, as to the portions of the risk assumed by other Underwriters under the Policy, certain of these parties too are

2

citizens of countries other than the United States which also participate in the Convention.

Compl. ¶ 3.

After Plaintiffs tendered payment to Defendant to cover hail damage to a commercial building, Defendant institute an arbitration proceeding underlying the present action, alleging that the payment was grossly inadequate. *See* Compl. ¶¶ 9-14; Answer ¶¶ 8-9. The parties have agreed to arbitrate the dispute pursuant to the Policy's arbitration provision and each have selected an arbitrator. *See* Compl. ¶ 15; Answer ¶¶ 9-10. The arbitrators, however, have been unable to reach an agreement as to the selection of a neutral umpire for the arbitration. *See* Compl. ¶ 16. Plaintiffs filed the present action for the appointment of an umpire, *see id.* ¶¶ 17-22, and Defendant does not oppose the relief Plaintiffs request, provided that the Court does not appoint as an umpire an individual proposed by the parties. *See* Answer ¶ 12.

Before the Court could appoint an umpire, however, Defendant filed the pending Motion to require Plaintiffs to join "all subscribers to the . . . [P]olicy." Mot. 3. According to Defendant, joinder is necessary to ensure that the Court has subject matter jurisdiction over the dispute and to ensure that the subscribers are bound by the arbitration process. *See* Br. in Supp. of Mot. to Join Subscribers ("Br.") 4-6. Plaintiffs filed their Opposition and Defendant filed its Reply.

## I. LEGAL STANDARD

### A. *Required Joinder*

Federal Rule of Civil Procedure 19 permits the joinder "into a lawsuit all those persons who ought to be there." *Pulitzer-Polster v. Pulitzer*, 784 F.2d 1305, 1308 (5th Cir. 1986). "The first step of a Rule 19 analysis is to determine whether an absent party is necessary to the litigation. If the court finds that an absent party is necessary, it must analyze whether that party can be joined." *Jaffer v. Standard Chartered Bank*, 301 F.R.D. 256, 260 (N.D. Tex. 2014) (citation

3

omitted). A party is deemed necessary under Rule 19(a)(1) if, in its absence, (1) "the court cannot accord complete relief among existing parties"; (2) disposition of the action may, as a practical matter, "impair or impede" the ability of the absent party to protect "an interest relating to the subject of the action"; or (3) those parties presently in the case will be "subject to a substantial risk of incurring double, multiple or otherwise inconsistent obligations." FED. R. CIV. P. 19(a)(1); *see also Pulitzer-Polster*, 784 F.2d at 1308-09. The moving party "has the initial burden of demonstrating that a missing party is necessary"; once the moving party meets this burden, "the burden of disputing this initial appraisal falls on the party who opposes joinder." *Hood ex rel. Mississippi v. City of Memphis*, 570 F.3d 625, 628 (5th Cir. 2009) (quoting *Pulitzer-Polster*, 784 F.2d at 1309).

### B. *Permissive Joinder*

Federal Rule of Civil Procedure 20(a)(1) provides that persons may be joined in one action as plaintiffs if "(A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all plaintiffs will arise in the action." The Rule permits joinder of persons as defendants if "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." FED. R. CIV. P. 20(a)(2). The movant has the burden of showing that the party to be joined is an appropriate party under Rule 20. *See, e.g., Graduate Med. Educ. Dev., LLC v. St. George's Univ., Ltd.*, Civ. A. H-15-2641, 2016 WL 5844707, at *14 (S.D. Tex. Oct. 6, 2016). "[E]ven if this test is satisfied, district courts have the discretion to refuse joinder in the interest of avoiding prejudice and delay, ensuring judicial economy, or safeguarding principles of

4

fundamental fairness." *Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 521 (5th Cir. 2010) (citations omitted).

## II.  ANALYSIS

### A.  *Subject Matter Jurisdiction*

"The district courts . . . have original jurisdiction over . . . an action or proceeding" falling under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("Convention") "regardless of the amount in controversy." 9 U.S.C. § 203. "For a federal court to have jurisdiction under the Convention, two requirements must be met: (1) there must be an arbitration agreement or award that falls under the Convention, and (2) the dispute must relate to that arbitration agreement." *Stemcor USA Inc. v. CIA Siderurgica do Para Cosipar*, 927 F.3d 906, 909 (5th Cir. 2019). An arbitration agreement falls under the Convention if:

> (1) there [is] an agreement in writing to arbitrate the dispute; (2) the agreement . . . provide[s] for arbitration in the territory of a Convention signatory; (3) the agreement to arbitrate . . . arise[s] out of a commercial legal relationship; and (4) at least one party to the agreement [is] not . . . an American citizen.

*Id.* at 910 (citing, among other authorities, *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 339 (5th Cir. 2004)). Moreover, an arbitration agreement that is "'entirely between citizens of the United States'" may nonetheless "fall under the Convention" if it "involve[s] property located abroad, envisage[s] performance or enforcement abroad, or ha[s] some other reasonable relation with one or more foreign states." *Brittania-U Nigeria, Ltd. v. Chevron USA, Inc.*, 866 F.3d 709, 712 (5th Cir. 2017) (quoting 9 U.S.C. § 202).

Here, Defendant asserts that "without joinder of the subscribers," the Court cannot ascertain their citizenship and "confirm[] jurisdiction under 9 U.S.C. §§ 202-03." Br. ¶ 7. As noted above, however, the Court does not need to ascertain the citizenship of every subscriber. Rather, an arbitration agreement falls under the Convention if "at least *one* party to the agreement

5

[is] not . . . an American citizen," *Stemcor USA Inc.*, 927 F.3d at 910 (citation omitted) (emphasis added), or if the arbitration agreement "ha[s] some other reasonable relation with one or more foreign states." *Btittania-U*, 866 F.3d at 712. As the Court could have subject matter jurisdiction over the dispute so long as one of the subscribers to the Policy is a not an American citizen, the Court finds that Defendant did not meet its burden of demonstrating that joinder of any party is proper. *See Hood*, 570 F.3d at 628. Consequently, the Court denies the Motion on this basis.

Nonetheless, the Court finds that Plaintiffs did not plead sufficient facts to show that the Court has subject matter jurisdiction. Plaintiffs contend that they adequately alleged the citizenship of a party to the action because they "affirmatively alleged that Cyrene," which Plaintiffs claim is a Name to the Policy, "is organized under the law of a foreign country (the United Kingdom) that has signed the Convention." Opp'n to James Morgan, Ltd.'s Mot. to Join Subscribers ("Opp'n") 5-6. In reality, however, Plaintiffs alleged only that Cyrene: (1) "is a corporate member and capital provider for Syndicate 1969"; (2) "is a subsidiary of Cyrene Investments Limited"; and (3) that Cyrene Investments Limited, the parent company, "is organized and maintains its principal place of business in the United Kingdom." Compl. ¶ 3. Even assuming that Cyrene is a Name of Syndicate 1969, Plaintiffs alleged the state of organization and the principal place of business of Cyrene's parent, rather than of Cyrene. *See Burnside v. Sanders Assocs., Inc.*, 507 F. Supp. 165, 166-67 (N.D. Tex. 1980), *aff'd*, 643 F.2d 389 (5th Cir. 1981) (noting that a subsidiary is a separate entity for citizenship purposes unless the subsidiary "is not really a 'separate entity'" (citation omitted)). As there are insufficient facts in the record to permit the Court to ignore Cyrene's corporate identity, the Court cannot conclude that at least one party to the agreement at issue in this case is not an American citizen.

## B. *Parties Bound by an Arbitration Decision*

The Court further finds that Defendant did not meet its burden of showing that that "[j]oinder of the Subscribers is needed to [e]nsure they are bound by the arbitration process." Br. 5. Although the underlying arbitration agreement provides that a third arbitrator or umpire shall be selected by the parties' chosen arbitrators, *see* Compl. Ex. A at 18, this method for selecting an umpire has failed. *See id.* ¶ 18; Answer ¶ 16 ("[Defendant] is unable to admit or deny whether [the arbitrators] have been unable to reach an agreement regarding the appointment of a third arbitrator."). Where the parties' chosen method for selecting a third arbitrator fails, the Federal Arbitration Act and the Texas Arbitration Act provide that the third arbitrator can be appointed by a court upon application of any party. *See* 9 U.S.C. § 5; TEX. CIV. PRAC. & REM. CODE ANN. § 171.041. Accordingly, Plaintiffs' motion for the appointment of a neutral umpire is consistent with binding law and the terms of the parties' agreement.

Furthermore, the underlying agreement provides that all Subscribers agree to "abide by the final decision of such Court or of any Appellate Court" where the suit is "instituted against any" of the subscribers. *See* Compl. Ex. A at 19. Defendant admits that it made the demand for arbitration, *see* Answer ¶ 27, and, therefore, the underlying action is asserted by Defendant against Plaintiffs. In other words, the Subscribers have already agreed to be bound by a decision in the underlying action because it was instituted against them. Moreover, Plaintiffs represented to the Court that they are the subscribers to the relevant Policy, *see* Compl. 1, and that a judgment as to them will be binding as to all subscribers pursuant to the terms of the Policy and through collateral estoppel.[1] *See* Opp'n 7-8 (citing *Corfield*, 355 F.3d at 861). Having considered the relevant law,

---

[1] Defendant's concerns will likely be assuaged once Plaintiffs amend the Complaint to clearly identify the citizenship of a Name in this action. Once Plaintiffs identify the Name, even if it is later determined that the name was the only party properly joined, the rights of the other names will be "determine[d] . . . through collateral estoppel or preclusion." *Corfield*, 355 F.3d at 861. Additionally, given that Plaintiffs prevail on the pending Motion, they may

7

the terms of the Policy, and Plaintiffs' representations, the Court finds that Defendant did not meet its burden of showing that any party should be joined to this action. Consequently, the Court denies the Motion.

### III. CONCLUSION

For the reasons discussed above, the Court denies the Motion. The Court finds, however, that Plaintiffs have not shown that the Court has subject matter jurisdiction. Accordingly, no later than 7 days from the date of this Order, Plaintiffs must file an amended complaint that alleges the citizenship of Cyrene Capital Limited or another Name to the Policy.

**SO ORDERED.**

SIGNED October 21, 2019.

KAREN GREN SCHOLER
UNITED STATES DISTRICT JUDGE

---

be judicially estopped from later attempting to argue that the remaining Names are not bound by a final judgment. *See Fornesa v. Fifth Third Mortg. Co.*, 897 F.3d 624, 627 (5th Cir. 2018) (quoting *Love v. Tyson Foods Inc.*, 677 F.3d 258, 261 (5th Cir. 2012)).